STAHL & ZELMANOVITZ

October 15, 2024

**By ECF**

The Honorable Mary Kay Vyskocil
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **BKNS Management, LLC v. Messner Reeves, LLP, et al.
               Case No. 24-cv-005581 (MKV)**

Dear Judge Vyskocil:

    We represent the plaintiff BKNS Management, LLC ("BKNS") in this action. We write regarding the request by defendants Messner Reeves LLP and its partner Torben Welch (collectively, "defendants") for a pre-motion conference seeking leave to file a motion pursuant to Federal Rules of Civil Procedure 23.1, 12(b)(6), and 28 U.S.C. § 1404(a).

**Background**

    This action is brought to address a massive fraudulent scheme perpetrated by defendants against Abbson LLC ("Abbson"), of which BKNS is a 39% equity owner, and others, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and state and common law. The complaint alleges that defendants unlawfully converted millions of dollars from Abbson and other victims by means of an "open-ended" RICO scheme and not a closed-end scheme as defendants imply. Defendants were key players in this scheme to fraudulently induce companies in need of cash, like Abbson, to make multi-million deposits to a shell company lender set up by defendants for the feigned purpose of having this sham lender provide a loan four times the deposit amount. The deposits were pocketed and no loans were ever made. Defendants first kept the deposit payments in the Messner Reeves escrow account and then apparently funneled the deposits to the other defendants. In response to repeated demands for payment of the loan proceeds, defendants manufactured excuses for delaying funding, thereby allowing defendants to dissipate the deposit payments, and then failing to return the deposits. None of the victims, like Abbson, received either the loan proceeds or had their deposit payments returned.

**Dismissal Under Rule 23.1 Is Not Warranted**

    Defendants first raise the issue of the absence of a verification by plaintiff. As defendants acknowledge, however, this oversight is a technical defect and the courts in this District hold that

1

STAHL & ZELMANOVITZ

it can be addressed by the submission of an affidavit from the plaintiff. As stated in *Cordts-Auth v. Crunk, LLC*, 815 F. Supp. 2d 778, 793 (S.D.N.Y. 2011): "'[t]he verification requirement of Rule 23.1 is not intended to be a general impediment to shareholder derivative actions but, rather, to those derivative lawsuits brought solely for the purpose of harassment or to force a quick settlement.' *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 222 (E.D.N.Y. 2005). Indeed, '[w]here appropriate, courts allow plaintiffs to cure a verification defect by submitting an affidavit.' *Id.* Therefore, Plaintiff's failure to verify the Amended Complaint 'is not fatal to the lawsuit.' *Id.*" BKNS should be allowed to cure this procedural technicality by affidavit or, as directed by the Court, by amended complaint.

Defendants next argue that to hold the other Abbson members accountable for their failure to cause the RICO complaint to be filed for some 16 days after formal demand is "not reasonable." Putting aside the absence of any cited legal authority for any specific time frame for complying with a demand, the fact is that this demand was made months after BKNS's persistent demands that the other Abbson members pursue Abbson's claims. Then, after all that time, BKNS was informed that a suit would be forthcoming, but it still was not. It was only after BKNS filed this lawsuit that defendants brought such a suit in Utah. Had BKNS not filed suit, it is questionable when, if at all, such a suit would ever have been commenced by the other Abbson members. Moreover, that later suit, brought in the District of Utah, lumping Abbson together with many other plaintiffs, cannot be viewed as appropriately seeking the relief required for the benefit of Abbson as opposed to the lawsuit commenced by BKNS. The other two members of Abbson have no "skin in the game." Neither one of those other two members provided even one cent to effect the sham loan fraudulently orchestrated by defendants; all of the funds were contributed by BKNS. The other members have nothing to lose or to gain by that other lawsuit. Further, the other members of Abbson may be responsible for the situation Abbson finds itself in and are, therefore, incapable of diligently prosecuting Abbson's claim like BKNS can.

**The RICO Claims Should Be Sustained**

As mentioned above, the RICO claim alleged in this lawsuit is an "open-ended," ongoing RICO scheme, not a "closed-ended" one. Thus, defendants' reliance on the Second Circuit's opinion in *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008), that the time frame of the predicate acts here is too short to establish continuity for purposes of RICO, is misplaced. The Court in *Spool* dealt expressly with a *closed-end* scheme, which requires a period of perhaps two years. *Id.* at 185. BKNS's complaint, on the other hand, alleges that: "[t]he repeated conduct of racketeering activity is ongoing and continuous, and amounts to or poses a continuing threat of infinite duration that is of similar criminal activity in the future, as a regular way of conducting the RICO Enterprise's business. The RICO Enterprise poses the threat of continuing to plunder and retain substantial funds . . . ." Complaint, ¶ 64.

Defendants, like the usual RICO defendant, also make the blatantly dismissible argument that the RICO predicate acts alleged in the complaint fail to satisfy Rule 9(b). Even a cursory glance at the complaint, *see* paragraphs 46-49, demonstrate that this argument is unavailing.

2

STAHL & ZELMANOVITZ

Although plaintiff believes it is not necessary, additional predicate acts can be specified in an amended complaint, including defendants' transmissions of false and fraudulent communications of excuses for delaying payment, all for the purpose of lulling plaintiff into forbearing from pursuing their claims, and the fact that the fraudulent information appearing on the sham lender's website continued unabated. Similarly, the pattern of racketeering activity is readily established. All of the "acts of wire fraud were not isolated, were related as part of defendants' scheme to defraud, and are part of a pattern of racketeering activity with the illicit goal of defrauding companies in dire need of financing . . . ." Complaint ¶ 52. "The predicate acts have the same purpose, result, participants and methods of commission, and are not isolated events." Complaint ¶ 62. *See also* Complaint ¶¶ 63-64. The specific roles of these defendants are delineated. (*See* below.)

Defendants' argument that as attorneys they cannot be liable "for mere provision of legal services," is especially dismissible. The cloak of an attorney does not shield one from liability under RICO when the attorney, like defendants here, did more than just provide legal services that facilitated the operation of the enterprise. *See* Complaint ¶¶ 33-39. Defendants "participated in the heart of the conduct of the enterprise" and had a "measure of control over the enterprise." *Alix v. McKinsey & Co.*, No. 18-CV-4141 (JMF), 2023 U.S. Dist. LEXIS 145872, at *26-27 (S.D.N.Y., Aug. 18, 2023). *See also Hottinger v. Amcoal Energy Corp.*, No. 89 Civ. 6391 (LMM), 1994 WL 652499, 1994 U.S. Dist. LEXIS 16505, at *15-16 (S.D.N.Y., Nov. 17, 1994).

### The Court Should Not Transfer The Case To Utah

It would be contrary to the interests of justice if this case were to be transferred to Utah. This action was filed before the one in Utah. Abbson is a New York limited liability company with its members all located in New York and Connecticut. The most effective vehicle for enforcing the rights of Abbson against defendants, a *national law firm including a presence in New York*, is in New York. In this case before Your Honor, the rights of Abbson alone would be adjudicated, whereas in Utah any recovery by all of the plaintiffs there would have to be shared. Moreover, Abbson is the plaintiff with the most financial loss of all defendants. Abbson's rights should be adjudicated separately, and not part of an aggregation of claims where any recovery would have to be somehow allocated.

### Conclusion

For the above reasons, the Court should not entertain defendants' prospective motion. If the Court wishes to conduct a conference on the matter, it is respectfully requested that the Court do so after October 25, 2024, in view of the religious holiday observance by plaintiff and its counsel through that date.

Respectfully submitted,

Joseph Zelmanovitz

3