# STAHL & ZELMANOVITZ

November 25, 2024

**By ECF**
The Honorable Mary Kay Vyskocil
United States District Judge
United States District Court
500 Pearl Street
New York, New York 10007

Re: **BKNS Management, LLC v. Messner Reeves, et al., Case No. 24-cv-005581 (MKV)**

Dear Judge Vyskocil:

We represent plaintiff BKNS Management, LLC ("BKNS") in this action. We write regarding the second request by defendants Messner Reeves LLP and its partner Torben Welch (collectively, "defendants") for a pre-motion conference seeking leave to file a motion pursuant to Federal Rules of Civil Procedure 23.1, 12(b)(6), and 28 U.S.C. § 1404(a).

## Background

As we stated in our prior letter to the Court, dated October 15, 2024 (ECF #25), in response to defendants' first pre-motion conference letter, defendants were key players in the scheme alleged in the Amended Complaint ("AC") to fraudulently induce companies in need of cash, like Abbson, to make multi-million dollar deposits to a shell company and alleged lender set up by defendants for the feigned purpose of having this sham lender provide a loan four times the deposit amount. The deposits were pocketed and no loans were made. As alleged in the Amended Complaint, and as explained below, defendants were key actors in the fraud.

## Dismissal Under Rule 23.1 Is Not Warranted

Defendants argue that the requisites of Rule 23.1 were not complied with because Abbson initiated a complaint in the Utah Federal District Court (albeit *after* the instant action in this Court was filed), which supposedly demonstrates that at the time of the filing of the *Amended Complaint* the other members of Abbson complied with plaintiffs' demand that suit be brought against defendants and others. Not only do defendants tacitly concede that the demand was made before this action was initiated–which satisfies the critical requirement of Rule 23.1 that demand be made before the complaint is initiated,–not only do defendants acknowledge that the Utah action was commenced *after* this action was initiated, but in addition, defendants ignore other critical facts alleged in the Amended Complaint. For example, defendants ignore the facts that plaintiff's demand, that the directors and officers of Abbson (Chad Abbott and Igor Boldyrev) take action against those responsible for the scheme alleged in the Amended Complaint, dates back "many months prior to July 2024" AC ¶ 18[1]; and that Abbott and Boldyrev, after many

---

[1]     In fact, a meeting among Abbott, Boldyrev, and plaintiff's principal, was held in a Manhattan hotel on March 21, 2024, where plaintiff's principal pleaded with Abbott and Boldyrev to take action.

747 THIRD AVENUE
NEW YORK, NY 10017
JZELMANOVITZ@SZLAWLLP.COM

FAX: (212) 826-6402
PHONE: (212) 826-6422

STAHL & ZELMANOVITZ

demands by plaintiff, finally sent a termination notice to INBE to start the process of demanding the return of the millions of dollars misappropriated through defendants' fraudulent scheme,[2] but even then, however, Abbott and Boldyrev failed to commence suit. AC ¶ 18.  It is not mere conjecture to suggest that the reason for Abbott's and Boldyrev's hesitation to file suit after plaintiff had requested repeatedly that they to do so, is because of their self-interest in avoiding the exposure of any misconduct on their part.  *See Wash. Frontier League Baseball, LLC v. Zimmerman*, 1:14-cv-01862-TWP-DML, 2015 U.S. Dist. LEXIS 155731, at *19 (S.D. Ind., Nov. 18, 2015) ("refusal was the result of bias on the part of the directors because of their self-interest").  Following up on months of demands that went unaddressed, plaintiff then commenced this action.  Thus, this is not a matter of 16 days as defendants characterize it; it is a matter of months of demands ignored.  The fact that Abbott and Boldyrev commenced suit in Utah a day after this action was filed is merely a product of their attorney's desire to jump on the bandwagon with no authority to do so. AC ¶ 19.  That act, coming after suit was already filed in this Court after months of neglect by Abbott and Boldyrev, should be deemed a nullity.

There is no automatic time line by which to measure whether a suit was filed prematurely after a demand was made and it depends on the circumstances.  *See Mozes, General Electric Co. v. Welch*, 638 F. Supp. 215, 220 (D. Conn. 1986); *Recchion, Westinghouse Electric Co, v. Kirby*, 637 F. Supp. 1309, 1319 (W.D. Pa, 1986).  Here, plaintiff acted more than reasonably in waiting months before commencing suit after so long a period of neglect and disregard by Abbott and Boldyrev. *See Rubin v. Posner*, 701 F. Supp. 1041, 1046 (D. Del. 1988) (where Board did nothing in response to demand for a month, filing of the complaint was reasonable).  Any further delay in filing suit would have further jeopardized the prospect of obtaining relief for Abbson against those responsible for fraudulently appropriating its funds, as defendants had already been named in another suit by another victim.  In fact, a prior lawsuit filed in the Central District of California on June 18, 2024, on behalf of another victim included information concerning the fraud against Abbson yet did not name Abbson as a party plaintiff.

**The RICO Claims Should Be Sustained**
Defendants essentially repeat the same meritless arguments they raised in their first pre-motion letter regarding the RICO claims.  Yet, they fail to address the most significant point we had pointed out in our response: The RICO claim alleged in this lawsuit is an "open-ended," ongoing RICO scheme, not a "closed-ended" one.  For this reason, defendants' reliance on the Second Circuit's opinion in *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008), that the time frame of the predicate acts here is too short to establish continuity for purposes of RICO, is misplaced.  The Court in *Spool* dealt expressly with a *closed-end* scheme, which requires a period of perhaps two years.  *Id.* at 185.  BKNS's complaint, on the other hand, alleges that the repeated conduct of racketeering activity is ongoing and continuous, and amounts to or poses a continuing threat of infinite duration that is of similar criminal activity in the future, as a regular way of conducting the RICO Enterprise's business.  *See, e.g.*, AC ¶¶ 64-68.

---

[2]        The termination notice was sent in early April 2024, only after plaintiff's repeated insistence that it be sent.

2

STAHL & ZELMANOVITZ

Defendants, like the usual RICO defendant, also make the blatantly dismissible argument that the RICO predicate acts alleged in the complaint fail to satisfy Rule 9(b) as they relate to defendants. The allegations of the Amended Complaint belie that contention. *See, e.g.,* AC ¶¶ 42, 51, 55, 67. Similarly, the pattern of racketeering activity is readily established. All of the acts of wire fraud were not isolated, were related as part of defendants' scheme to defraud, and are part of a pattern of racketeering activity with the illicit goal of defrauding companies in dire need of financing. The predicate acts have the same purpose, results, participants and methods of commission, and are not isolated events.

As we stated in our first pre-motion conference letter, defendants' argument that as attorneys they cannot be liable "for mere provision of legal services," is especially dismissible. The cloak of an attorney does not shield one from liability under RICO when the attorney, like defendants here, did more than just provide legal services that facilitated the operation of the enterprise. *See* AC ¶¶ 42, 51, 55, 67. Defendants "participated in the heart of the conduct of the enterprise" and had a "measure of control over the enterprise." *Alix v. McKinsey & Co.*, No. 18-CV-4141 (JMF), 2023 U.S. Dist. LEXIS 145872, at *26-27 (S.D.N.Y., Aug. 18, 2023). *See also Hottinger v. Amcoal Energy Corp.*, No. 89 Civ. 6391 (LMM), 1994 WL 652499, 1994 U.S. Dist. LEXIS 16505, at *15-16 (S.D.N.Y., Nov. 17, 1994).

**The Court Should Not Transfer The Case To Utah**

As we stated in our first pre-motion conference letter, it would be contrary to the interests of justice if this case were to be transferred to Utah. It is undisputed that this action was filed before the one in Utah. It is also undisputed that Abbson is a New York limited liability company with its members all located in New York and Connecticut. The most effective vehicle for enforcing the rights of Abbson against defendants, a *national law firm including a presence in New York*, is in New York. In this case before Your Honor, the rights of Abbson alone would be adjudicated, whereas in Utah any recovery by all of the plaintiffs there would have to be shared. Moreover, Abbson is the plaintiff with the most financial loss of all plaintiffs. Abbson's rights should be adjudicated separately, and not part of an aggregation of claims where any recovery would have to be somehow allocated.

Defendants' glib statement that "Abbson itself does not seem to agree with Plaintiff, as evidenced by Abbson's decision to initiate litigation in Utah," does not take into account the true circumstances as described above. Filing in Utah was perhaps more convenient *for the attorney* who filed it there (albeit without authority), but not for Abbson. The fact that Abbott and Boldyrev desire to distance themselves from anyone pointing an accusing finger at them—the reason for their resistance to filing suit when demanded of them—is no reason why Abbson as an entity should suffer the consequences. The action was filed here and should remain in this Court.

Respectfully submitted,

Joseph Zelmanovitz (JZ 0085)

cc: All Counsel via ECF

3