UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
BKNS MANAGEMENT LLC, *derivatively on* :
*behalf of* ABBSON LLC, :
: 24-CV-5581 (JAV)
Plaintiff, :
: OPINION AND ORDER
-v- :
:
MESSNER REEVES, LLP, CLEARWATER :
PREMIERE PERPETUAL MASTER LLC, :
JONATHAN WRIGHT, TORBEN WELCH, and :
TITAN FINANCIAL, LLC, :
:
Defendants. :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

On behalf of Abbson LLC, Plaintiff BKNS Management, LLC, purports to bring derivative claims under the Racketeer Influenced and Corrupt Organizations Act and common law against Defendants. For the reasons herein, the Court GRANTS Defendants' motion to dismiss Plaintiff's Amended Complaint.

## BACKGROUND

**A. Relevant Allegations in the Complaint**

The following allegations are taken from the Amended Complaint and are assumed true for purposes of this motion. Plaintiff BKNS Management LLC ("BKNS") is a New York limited liability company with its principal place of business in New York. ECF No. 32 ("Am. Compl."), ¶ 9. BKNS is a member of Abbson LLC ("Abbson") and holds 39% of Abbson's membership interests. *Id.*

Abbson is a New York limited liability company that "was engaged in the business of developing and creating podcasts." *Id.* ¶ 10.

In May 2023, Abbson sought a substantial loan to fund Abbson's then current operations and the expansion of its business. *Id.* ¶ 22. Abbson learned that a purported lender, INBE, was in the business of making such loans. *Id.* Abbson thereafter entered into a Business Expansion Line of Credit Agreement with INBE (the "INBE Agreement") for a prospective $14 million loan. *Id.* ¶ 24. Pursuant to that agreement, Abbson wired an "interest reserve deposit" of $3.5 million to Messner Reeves LLP ("Messner"), which was acting as escrow agent for INBE, on June 27, 2023. *Id.* ¶¶ 23-24. Abbson believed, in line with the language of the INBE Agreement, that the deposit would "secure[] the payment to INBE of initial interest and other charges attendant to the loan." *Id.* ¶ 22. Abbson was advised the deposit would be kept in an escrow account "so that the advance payment . . . would be secure until the loan began to be funded." *Id.*

Funding of the loan was to commence 90 days after receipt of the $3.5 million deposit. *Id.* ¶ 26. Funding was not received by the required date, however. *Id.* Abbson made repeated inquiries of INBE regarding the status of the loan proceeds, but heard nothing in return. *Id.* ¶ 29.

Plaintiff avers that "for many months prior to July 2024," BKNS, through its principal Brian Khunovich, demanded the other members of Abbson—Chatt Abbott (Abbson's Chief Executive Officer) and Igor Boldyrev (Abbson's Chief Financial Officer)—"take action against INBE to recover from INBE and those responsible"

the deposit that Abbson transmitted. *Id.* ¶ 18. The INBE Agreement provides that, upon INBE's failure to fund the $14 million loan, Abbson could terminate the agreement and obtain a full refund of the deposit. *Id.* ¶ 29. In March 2024, "[a]fter much urging" from Khunovich, Abbson sent a termination letter to INBE and demanded the return of the deposit. *Id.* INBE did not return the deposit, however. *Id.*

To bolster the allegations in the Amended Complaint, Plaintiff offers an affidavit from Brian Khunovich along with its opposition brief. *See* ECF No. 37-3 ("Khunovich Decl."). Khunovich avers that, starting in January 2024, he requested that Abbott and Boldyrev "take action" to have the deposit returned "or to commence litigation to recover the funds." *Id.* ¶ 3. He further states that on March 21, 2024, Khunovich and his attorneys met with Abbott and Boldyrev to request they send the termination notice to INBE. *Id.* ¶ 4. According to Khunovich, at that meeting, "[a]ll parties readily acknowledged that INBE would probably ignore the termination notice and withhold the ICA Deposit, making litigation a necessity to enforce Abbson's rights to recover its funds." *Id.*

In an email transmitted on July 8, 2024, to Abbott and Boldyrev, BKNS made a "demand" that Abbott's management "commence a lawsuit against the defendants and related parties and assert claims under RICO and state law and common law." Am. Compl. ¶ 19. Plaintiff alleges that Abbott and Boldyrev "had their attorney respond that the attorney would be filing such an action on behalf of Abbson." *Id.* ¶

3

20.  Sixteen days later, on July 24, 2024, Plaintiff commenced this suit.  At the time this derivative action was filed, Abbson had not yet filed suit.  *Id.*

Plaintiff contends that Defendants together compose an association-in-fact as a RICO Enterprise under 8 U.S.C. § 1962(c), which has been operating its fraudulent scheme since 2022.  *Id.* ¶¶ 34-35.  Defendants allegedly arrange loan agreements with victims that require victims to "remit substantial sums to INBE . . . just for the privilege of being able to receive funds from INBE in the form of purported loans that in fact never materialized."  *Id.* ¶ 34.  Plaintiff avers that Messner, a law firm with offices in several states, and Torben Welch, the managing partner of Messner's Utah office, represented the other Defendants in perpetuating similar fraudulent schemes in other states.  *Id.* ¶¶ 33-38.  Messner and Welch allegedly also represent INBE and "were instrumental in the establishment of INBE."  *Id.* ¶ 38.

### B.  Procedural History

Plaintiff filed this present action in this Court on July 24, 2024.  ECF No. 2.  Defendants submitted a pre-motion letter outlining the bases for their contemplated motion to dismiss, including their argument that dismissal was required under Rule 23.1 for filing this suit prematurely.  ECF No. 24.  The Court granted Plaintiff an opportunity to amend its complaint to address any deficiencies identified in the Defendant's pre-motion letter.  ECF No. 26.  The Order stated that "this will be Plaintiff's last opportunity to amend in response to any issue raised in the parties' pre motion letters."  ECF No. 26.

Plaintiff filed its Amended Complaint on November 13, 2024. ECF No. 32. The Amended Complaint asserts the following causes of action: (1) violation of the Racketeer Influenced & Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c); (2) conspiracy to violate RICO; (3) conversion and aiding and abetting conversion; (4) fraud and aiding and abetting fraud; and (5) negligence.

On July 25, 2024, Abbson filed a lawsuit in the United States District Court for the District of Utah, Civil Action No. 2:24-cv-00520-DBB-DBP. ECF No. 36 ("Def. Mem.") at 12; *see also* ECF No. 36, Ex. A. In the Utah suit, Plaintiffs brought derivative claims against Defendants for causes of action under RICO and common law related to negligence, conversion, and breach of fiduciary duty.

Defendants filed their motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 on December 16, 2024. ECF No. 32. On May 6, 2025, the United States District Judge presiding over the Utah suit dismissed the RICO charges with prejudice. *See* ECF No. 40, Ex. C.

## LEGAL STANDARDS

### 1. Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc*, 138 F.4th 104, 108 (2d Cir. 2025). The court, however, does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von*

*Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quotation marks omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (first alteration in original); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).

In deciding a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). Nevertheless, the Court may consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

### 2. Pleading Requirements for Derivative Action

#### a. Pleading Standard Under Rule 23.1

In addition to the general pleading requirements set forth in the Federal Rules of Civil Procedure, "the pleading of derivative actions must satisfy the requirements set forth in Rule 23.1 of the Rules." *Halebian v. Berv*, 590 F.3d 195, 204 (2d Cir. 2009). To bring a derivative suit, a plaintiff "must first exhaust

6

intracorporate remedies by making a demand on the directors to obtain the action desired." *Scalisi v. Fund Asset Mgmt.*, 380 F. 3d 133, 138 (2d Cir. 2004) (quotations and citations omitted). Complaints asserting derivative claims must therefore "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and . . . the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). The Rule requires "specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question." *Halebian*, 590 F.3d at 204 (quoting *RCM Secs. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991)); *In re Am. Int'l Grp. Inc. Deriv. Litig.*, 700 F. Supp. 2d 419, 430 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x. 285 (2d Cir. 2011) (noting that Rule 23.1 "imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6)"). "[C]onclusory statements or mere notice pleading" do not satisfy Rule 23.1's standard of particularity. *Am. Int'l Grp. Inc.* 700 F. Supp. 2d at 430 (quoting *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000)).

      b. **Adequacy of Demand**

"In contrast to a motion to dismiss pursuant to Rule 12(b)(6), a Rule 23.1 motion to dismiss for failure to make a demand is not intended to test the legal sufficiency of the plaintiffs' substantive claim," but rather "to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *In re Veeco Instruments,*

*Inc. Sec. Litig.*, 434 F. Supp. 2d 267, 273 (S.D.N.Y. 2006) (cleaned up). "State law generally determines whether, in an action classified as derivative, a pre-suit demand is necessary, and if so, whether the demand made was adequate." *Halebian*, 590 F.3d at 206; *see also RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991) ("the adequacy of [a plaintiff's pre-suit demand] efforts is to be determined by state law absent a finding that application of state law would be inconsistent with a federal policy underlying a federal claim in the action."); *Canty v. Day*, 13 F. Supp. 3d 333, 342 (S.D.N.Y. 2014) (same).

Abbson is a New York limited liability company with its principal place of business located in New York. Am. Compl. ¶ 10. Thus, New York law governs. Under New York law, a demand to sue "need not assume a particular form . . . [or] be made in any special language." *Stoner v. Walsh*, 772 F. Supp. 790, 796 (S.D.N.Y. 1991) (quoting *Ripley v. Int'l Railways of Central Am.*, 8 A.D.2d 310 (1st Dep't 1959)). But the demand must inform management "with particularity" of the complained of acts, the potential defendants, and the specific remedial action sought. *Stoner*, 772 F. Supp at 796; *see also Levner v. Saud*, 903 F. Supp. 452, 456 (S.D.N.Y. 1994), *aff'd sub nom. Levner v. Prince Alwaleed*, 61 F.3d 8 (2d Cir. 1995); *see also Kenney v. Immelt*, 981 N.Y.S.2d 636 (N.Y. Sup. 2013) (under New York law, plaintiff in derivative action must plead not only that "demands were made on the [board] . . . to initiate legal action," but also "who made the demands, when they were made, which Board members they were made to, the content of the demands [and] why the Board refused to take action"). The demand must also "fairly and

adequately apprise the directors of the potential cause of action so that they, in the first instance, can discharge their duty of authorizing actions that 'in their considered opinion . . . [are] in the best interests of the corporation." *Grika v. McGraw*, 57 N.Y.S.3d 675 (N.Y. Sup. 2016), *aff'd sub nom. L.A. Grika on behalf of McGraw*, 76 N.Y.S.3d 546 (1st Dep't 2018).

### c. Business Judgment Rule

Should the demand be rejected, a derivative suit may "proceed only if the shareholder shows that the board's refusal was wrongful," *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 234 (2d Cir. 2015) (cleaned up), or "excused by extraordinary conditions," *Scalisi*, 380 F.3d at 138. Under New York law, a decision to reject a demand is presumed to be the exercise of valid business judgment. *Lerner ex rel. Gen. Elec. Co. v. Immelt*, 523 F. App'x 824, 826 (2d Cir. 2013). The substantive decision to adopt or refuse a derivative lawsuit demand "falls squarely within the embrace of the business judgment doctrine, involving as it did the weighing and balancing of legal, ethical, commercial, promotional, public relations, fiscal and other factors familiar to the resolution of many if not most corporate problems." *Auerbach v. Bennett*, 393 N.E.2d 994, 1002 (1979). New York's business judgment rule thus "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Id.* at 1000; *see also Espinoza*, 797 F.3d at 234. The business judgment rule applies equally to managers of LLCs. *Wen v. New York City Regional Ctr., LLC*, 695 F. Supp. 3d 517, 546 (S.D.N.Y. 2023).

Directors are afforded a "wide latitude" under the business judgment rule. *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986). To overcome the presumption created by the business judgment rule, "the plaintiff must plausibly allege with particularity either that the directors who made the decision were personally conflicted with respect to the demand, or that they did not employ adequate and appropriate . . . investigative procedures and methodologies in considering the demand, such that they violated their duty of care." *Lerner*, 523 F. App'x at 826 (2d Cir. 2013) (cleaned up). "[F]ew, if any, plaintiffs surmount [the] obstacle" of rebutting the presumption and successfully establishing wrongful refusal of a demand. *RCM Sec. Fund, Inc.*, 928 F.2d at 1328.

## DISCUSSION

To defeat Defendants' motion to dismiss, BKNS must plead with particularity under Rule 23.1 that it made a litigation demand, and that litigation demand was wrongfully refused by Abbson's other members and managers. Yet it is uncontested that, far from refusing to bring suit, in response to Plaintiff's July 8 demand Abbson agreed to initiate litigation to recover its deposit. And in fact, Abbson did bring its own suit against Defendants, the day after Plaintiff commenced this suit, a mere seventeen days following the demand. Plaintiff therefore cannot meet the pleading requirements to move forward with a derivative action.

"Courts have used two standards to weigh the issues in these relatively few cases [where action is taken before management issues a refusal in response to a demand]. Those standards distinguish between a board that takes no action at all

10

in response to a demand and a board that takes some action but has yet to issue a formal response to a demand." *Steinberg ex rel. Bank of Am. Corp. v. Mozilo*, 135 F. Supp. 3d 178, 183 (S.D.N.Y. 2015) (applying Delaware law).  Where no action has been taken prior to filing the suit, courts consider "whether the time between demand and filing of suit was sufficient to permit the Board of Directors to discharge its duty to consider the demand." *Id.* "Factors that weigh on that question include the complexity of the technological, quantitative, and legal issues raised by the demand." *Id.* (cleaned up).  "The second standard applies when a board takes some action in response to a demand, but has yet to issue a formal response." *Id.*  Under this standard, "the methods and manner in which the board has chosen to act on the demand represent judgments entitled to the benefit of the business judgment rule if taken in a manner that was informed and in good faith." *Id.* (citation omitted).

While the above situations may be relatively rare, the scenario presented in the instant case is even more unique.  Plaintiff filed this derivative suit *after* being informed that attorneys would be filing an action on behalf of Abbson.  Indeed, Plaintiff concedes that "there is no issue here of the board having enough time to explore and investigate whether to sue or not.  Everyone was on board, and Abbot and Boldyrev acknowledged that suit should be brought." ECF No. 37 ("Pl. Opp.") at 7.  Unsurprisingly, Plaintiff is unable to cite a single case in which a party was permitted to bring a derivative action after the corporate entity had already agreed to file suit in response to a demand and does indeed file its own suit.  Nor could it,

11

as a wrongful refusal to bring suit is a prerequisite to maintaining a derivative action. It is axiomatic that there cannot be a "wrongful" refusal if in fact there has been no refusal.

That is not to say that, even where an association has formally agreed to file suit, a subsequent failure to commence the action within a reasonable amount of time cannot constitute a de facto refusal. But as mere days passed between the July 8 demand and Abbson's commencement of litigation in the District of Utah, that situation is not presented here. Just as the corporate entity must be granted a reasonable amount of time to determine how to respond to a demand, *see Int'l Bhd. of Teamsters, Garage Emps. Loc. 272 Lab. Mgmt. Pension Fund v. Apple Inc.,* No. 1:23-CV-01867 (JLR), 2024 WL 475018, at *9 (S.D.N.Y. Feb. 7, 2024) (holding that a 14-day deadline was not a reasonable time for the board to investigate and respond to plaintiff's demand letter); *FLI Deep Marine LLC v. McKim*, 2009 WL 1204363, at *4 (Del. Ch. Apr. 21, 2009) (finding that three weeks was not a reasonable amount of turnaround time for the board to conduct an investigation before responding to a demand), so too must it be given sufficient time following its decision to litigate to actually commence the lawsuit. The corporate entity must be afforded the breathing room to exercise its business judgment regarding appropriate legal strategy, including the opportunity to consult with attorneys regarding such issues as venue, causes of action, and potential defendants, as well as the drafting of pleadings.

In opposing the motion to dismiss, Plaintiff primarily argues that the relevant time period is not the time that elapsed between the formal demand for suit submitted to Abbson on July 8 and the filing of the instant action. Pl. Opp. at 5-8. Rather, Plaintiff contends that its first "demand" came earlier, in January 2024, such that the lapse of time before Abbson agreed to file suit was not 16 days, but many months. Pl. Op. at 8. There are a number of problems with this argument.

To the extent Plaintiff seeks to rely on some prior communications between BKNS and Abbson as being the relevant "demand," the Amended Complaint fails to plead these with the particularity required by Rule 23.1. Neither the Amended Complaint nor the Khunovich Declaration indicate the date of these so-called demands, the specific contents of those demands, or the relief sought in those demands. Rather, the Amended Complaint and the Khunovich Declaration simply state that beginning in January 2024 Khunovich requested Abbott and Boldyrev "take action" to recover the INBE deposit. Am. Compl. ¶ 18; Khunovich Decl. ¶¶ 3-4. These allegations are not sufficient to establish that BKNS specifically demanded that Abbson initiate a lawsuit against Defendants.

In *Levner v. Saud*, 903 F. Supp. 452 (S.D.N.Y. 1994), in reasoning that was adopted by the Second Circuit, *Levner v. Prince Alwaleed*, 61 F.3d 8 (2d Cir. 1995), the district court held that a request that a corporation "take action" did not constitute an adequate demand under Delaware law. 903 F. Supp. at 456. The demand did not specify the relief sought and thus was insufficient to put the

13

corporation on notice that it sought the initiation of a lawsuit.  *Id.*  New York law similarly requires, at a minimum, that a demand request that the entity initiate legal action and inform the members of the potential causes of action.  *See, e.g.*, *Stoner*, 772 F. Supp at 796; *Kenney*, 981 N.Y.S.2d at 8-9; *Grika*, 57 N.Y.S.3d at 6-7.  Vague urgings that the members of Abbson take some unspecified "action" to recover its deposit does not satisfy the demand requirement.

The Khunovich Declaration does provide details regarding a conversation that occurred on March 21, 2024.  Khunovich Decl. ¶ 4.  Khunovich avers that, at that meeting, he "strongly urged Abbott and Boldyrev to send the termination notice to INBE."  *Id.* ¶ 4.  According to Khunovich, during that conversation, "[a]ll parties readily acknowledged that INBE would probably ignore the termination notice and withhold the ICA Deposit, making litigation a necessity to enforce Abbson's rights to recover its funds."  *Id.*  Yet all this establishes is that the members of Abbson were in accord on the next steps to be taken.  Notably, a few weeks later, Abbson did in fact send the termination notice.

Even were the Court to consider the March 21, 2024 conversation a demand for suit within the meaning of New York law, the fundamental problem remains the same.  Whether it took Abbson four months to respond to the demand or 16 days, at the time Plaintiff initiated the instant action, Abbson *had already agreed to file suit*.  Once Abbson agreed to initiate an action against Defendants, Plaintiff was precluded from initiating a derivative action on Abbson's behalf.

As Plaintiff's derivative suit must therefore be dismissed under Rules 12(b)(6) and 23.1, it is unnecessary at this time to reach the sufficiency of Plaintiff's RICO claims.

## CONCLUSION

Accordingly, Defendants' Motion to Dismiss is GRANTED.  The Clerk of the Court is respectfully directed to terminate ECF No. 36 and to close the case.

SO ORDERED.

Dated:  July 18, 2025
       New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge